**ERIE COUNTY RETIREES ASSOCIA-TION and Lyman H. Cohen, for himself and all others similarly situated, Plaintiff,**

v.

**The COUNTY OF ERIE, PENNSYL-VANIA and Erie County Employees' Retirement Board, Defendants.**

No. CIV. A. 98–272 Erie.

United States District Court, W.D. Pennsylvania.

April 16, 2001.

**MEMORANDUM OPINION**

McLAUGHLIN, District Judge.

This matter comes to us pursuant to a remand order issued by the United States Court of Appeals for the Third Circuit. Plaintiffs are retirees of the County of Erie ages 65 and older (and therefore eligible for Medicare) who are receiving health care coverage from the County under Highmark "SecurityBlue," a coordinated health care plan provided by Keystone Health Plan West, Inc., a federally qualified health maintenance organization ("HMO"). Plaintiffs contended that the County violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, by requiring them to accept coverage under this plan while offering younger retirees allegedly superior health care coverage initially under a traditional indemnity plan and thereafter under Highmark "SelectBlue," a "point-of-service" plan. Plaintiffs also asserted various state law theories of liability. On cross-motions for summary judgment, we held that the ADEA did not afford relief in the context of alleged discrepancies in health benefits offered by employers to retirees. *Erie County Retirees Ass'n v. County of Erie,* 91 F.Supp.2d 860, 880 (W.D.Pa.1999), *rev'd,* 220 F.3d 193 (3d Cir.2000). The Third Circuit disagreed, and remanded for "further proceedings consistent with [its] opinion, including giving the County the opportunity to establish its entitlement to a safe harbor under 29 U.S.C. § 623(f)(2)(B)(i)." *Erie County Retirees Ass'n v. County of Erie,* 220 F.3d 193, 217 (3d Cir.2000). For the reasons stated below, we find that the County is not entitled to a safe harbor under 29 U.S.C. § 623(f)(2)(B)(i).[1] Accordingly, we will

---

1. 29 U.S.C. § 623(f) provides in relevant part:

It shall not be unlawful for an employer, employment agency, or labor organization . . .

grant Plaintiff's Motion for Partial Summary Judgment [Doc. No. 16] and deny Defendant's Motion [Doc. No. 26].

## I. BACKGROUND

A full rendition of the facts is set forth in our first opinion, *Erie County Retirees Ass'n v. County of Erie*, 91 F.Supp.2d 860 (W.D.Pa.), *rev'd*, 220 F.3d 193 (3d Cir. 2000). Beginning February 1, 1998, Plaintiffs were required to either accept health care coverage from the County under SecurityBlue or forfeit coverage from the County altogether. SecurityBlue is different from a traditional indemnity plan "primarily in that the health care needs of each member are coordinated by his or her primary care physician ("PCP"), who is selected from a list of physicians provided in the SecurityBlue Provider directory." *Id.* at 863. In exchange for the loss of choice with respect to service providers, insureds pay no deductibles and there is generally little or no copayment obligation. The plan generally pays 100 percent of covered services, but no percentage of services that are not authorized. *Id.* SecurityBlue also differs from a traditional indemnity plan in that it covers pre-existing conditions without a waiting period, and provides benefits for eye examinations, dental visits and hearing aids. *Id.* In order to maintain coverage under SecurityBlue, Plaintiffs are required to continue to pay their Medicare Part B Medical Insurance Premiums.[2]

From February 1, 1998 to October 1, 1998, County retirees under age 65 continued to receive health care coverage under the County's traditional indemnity plan while Plaintiffs were required to accept coverage under SecurityBlue. From October 1, 1998 to the present, retirees under age 65 were covered under Highmark "SelectBlue," a hybrid "point-of-service" plan that combines the features of an HMO with the features of a traditional indemnity plan. Under SelectBlue, insureds select either the HMO option or the traditional indemnity option for each health care incident. *Id.* Pursuant to Highmark's underwriting criteria, eligibility for SelectBlue requires that individuals be ineligible for Medicare and live in the SelectBlue service area. *Id.*

A dramatic increase in the cost of health insurance coincided with the County's changes to its health care coverage policy. In its original brief, the County stated that it provides retirees with the least expensive coverage for which they are eligible:

Because SecurityBlue operates in conjunction with the Medicare program, Highmark charges premiums for SecurityBlue coverage which are far less than premiums for other plans. In 1998, the premium charged to the County for SecurityBlue participants was $0. Effective January 1, 1999, Highmark increased the monthly premium for SecurityBlue coverage from $0 to $47.00 for the same level of benefits coverage. Despite this significant increase in premiums, SecurityBlue remains the least expensive of the three plans utilized by the County. As such SecurityBlue was and continues to be the County's first choice among

---

(B) to observe the terms of a bona fide employee benefit plan—
(i) where, for each benefit or benefit package, the actual amount of payment made or cost incurred on behalf of an older worker is no less than that made or incurred on behalf of a younger worker, as permissible under section 1625.10, title 29, Code of Federal Regulations (as in effect on June 22, 1989).

2. The cost of the Medicare Part B premium has increased since the inception of this litigation. The cost has risen from $43.80 per month to $50 per month as of January 1, 2001. However, for purposes of this opinion, the precise amount of the premium is immaterial.

the three plans for coverage for eligible former employees. Because SecurityBlue coverage is limited to former employees who are Medicare eligible and live in the SecurityBlue service area, however, this plan is not available to all retirees.

The County's second choice for retiree medical benefits was the SelectBlue plan. Although more expensive than SecurityBlue, SelectBlue still represented a material cost savings to the County relative to the indemnity plan. Like SecurityBlue, however, SelectBlue was not available to all retirees. The County could not offer SelectBlue to medicare eligible retirees such as plaintiffs in this case because Medicare eligible retirees do not qualify for SelectBlue based on the underwriting criteria adopted by Highmark. In addition, the County could not provide SelectBlue coverage to retirees residing outside the SelectBlue service area. For those retirees who did not qualify for SelectBlue or SecurityBlue the County provided benefits under the traditional indemnity plan.

Defendant's Brief in Support of Cross–Motion for Summary Judgment (hereinafter "Defendant's Brief") at 7–8 [Doc. No. 27] (internal citations omitted). Plaintiffs allege that they are being treated adversely as compared to both active employees and younger retirees although, for purposes of their partial summary judgment motion, we are asked to consider the alleged disparity only between Plaintiffs and younger retirees. Complaint [Doc. No. 1] ¶¶ 39, 46.

As previously indicated, we concluded on our first examination of this issue that the ADEA, as amended by the Older Workers' Benefit Protection Act of 1990 ("OWBPA"), did not afford relief in the context of alleged discrepancies in health benefits offered by employers to retirees. *Erie County Retirees Ass'n v. Erie County*, 91 F.Supp.2d 860, 868–880 (W.D.Pa.1999),

*rev'd*, 220 F.3d 193 (3d Cir.2000). In reversing, the appeals court found that the County acted in contravention of the ADEA by treating Plaintiffs differently with respect to their "compensation, terms, conditions, or privileges of employment, because of ... age." *Erie County Retirees Ass'n v. County of Erie*, 220 F.3d 193, 217. The Court also concluded, however, that the "safe harbor set forth in 29 U.S.C. § 623(f)(2)(B)(i) is applicable if the County can meet the equal benefit or equal cost standard." *Id.* at 216. The Court remanded the case on the safe harbor issue, and provided the following direction on the application of equal benefit/equal cost standard in this case:

> In accordance with 29 C.F.R. § 1625.10(e), the "equal benefit" prong of the analysis should take into account equally both the Medicare-provided and the County-provided benefits which members of the plaintiff class receive. If the County cannot satisfy the "equal benefit" prong, the [district] court should then turn to the "equal cost" inquiry. The County argues that, in applying the "equal cost" analysis, the court should consider the costs which Medicare incurs on behalf of persons in SecurityBlue as well as the costs which the County itself incurs ... Clearly, the purpose of the equal benefit or equal cost standard is to encourage employers to spend equally on benefits for older and younger persons ... Accordingly, the district court should consider only those costs which the County itself incurs.

*Id.* at 216 (internal citations omitted).

## II. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). In order to withstand a motion for summary judgment, the non-moving party must "make a showing sufficient to establish the existence of [each] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In evaluating whether the non-moving party has established each necessary element, the Court must grant all reasonable inferences from the evidence to the non-moving party. *Knabe v. Boury Corp.,* 114 F.3d 407, 410, n. 4 (3d Cir.1997) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (quoting *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348).

### III. DISCUSSION

The "equal cost/equal benefit" rule is intended to "permit age-based reductions in employee benefit plans where such reductions are justified by significant cost considerations." 29 C.F.R. § 1625.10(a)(1). Specifically:

> [w]here employee benefit plans do meet the criteria in section 4(f)(2), benefit levels for older workers may be reduced to the extent necessary to achieve approximate equivalency in cost for older and younger workers. A benefit plan will be considered in compliance with the statute where the actual amount of payment made, or cost incurred, in behalf of an older worker is equal to that made or incurred in behalf of a younger worker, even though the older worker may thereby receive a lesser amount of benefits or insurance coverage. Since section 4(f)(2) is an exception from the general non-discrimination provisions of the

Act, the burden is on the one seeking to invoke the exception to show that every element has been clearly and unmistakably met. The exception must be narrowly construed.

*Id.* Put more simply, a benefit plan is ADEA compliant if it either provides equal benefits to employees or is of equal cost to an employer. In its present form, Section 4(f)(2)(B)(i) of the ADEA codifies this rule. 29 U.S.C. § 623(f)(2)(B)(i). As previously stated, the Third Circuit directed us to consider the "equal benefit" prong of the rule first and provided guidance on the issue; "[i]n accordance with 29 C.F.R. § 1625.10(e), [this] prong of the analysis should take into account equally both the Medicare-provided and the County-provided benefits which members of the plaintiff class receive." *Erie County Retirees Ass'n v. Erie County,* 220 F.3d 193, 216 (3d Cir.2000). In its entirety, 29 C.F.R. § 1625.10(e) provides:

> *Benefits provided by the Government.* An employer does not violate the Act by permitting certain benefits to be provided by the Government, even though the availability of such benefits may be based on age. For example, it is not necessary for an employer to provide health benefits which are otherwise provided to certain employees by Medicare. However, the availability of benefits from the Government will not justify a reduction in employer-provided benefits if the result is that, taking the employer-provided and Government-provided benefits together, an older employee is entitled to a lesser benefit of any type (including coverage for family and/or dependents) than a similarly situated younger employee. For example, the availability of certain benefits to an older employee under Medicare will not justify denying an older employee a benefit which is provided to younger em-

ployees and is not provided to the older employee by Medicare.

*Id.*

A necessary first step in our analysis is therefore the identification of what, if any, benefits are provided to Plaintiffs by the federal government under Medicare. *Erie Retirees,* 220 F.3d at 216 (3d Cir.2000). In *Pennsylvania Medical Society v. Snider,* 29 F.3d 886 (3d Cir.1994), the Third Circuit summarized the operation of the Medicare program:

> Medicare coverage is primarily divided into two parts. Part A covers all inpatient hospital expenses through an insurance plan. *See* 42 U.S.C. §§ 1395c to 1395i–4. All Medicare-eligible patients receive this benefit ... Part B covers certain physician services, hospital inpatient services, and other health services not covered under Part A. *See* 42 U.S.C. §§ 1395j to 1395w–4(j). Part B coverage is not freely or automatically available to all Medicare-eligible patients. To obtain this coverage, Medicare-eligible patients must first enroll in the Part B insurance program by paying insurance premiums ... *See* §§ 1395o–1395s. Once this is done, the federal government pays 80% of the "reasonable costs" of outpatient hospital services and 80% of the "reasonable charges" for physician services rendered to the insured. § 1395*l*.

*Id.* at 888. In the instant case, however, the federal government does not provide Medicare benefits to Plaintiffs because Highmark has contractually assumed this responsibility. SecurityBlue's Evidence of Coverage describes how its contract with the federal government operates:

> SecurityBlue is offered to you through a contract with the Health Care Financing Administration (HCFA), the government agency that administers Medicare. Under this agreement, the government agrees to pay Keystone Health Plan West, the HMO through which SecurityBlue is provided, a fixed monthly amount to provide health care to you. *In return, SecurityBlue provides or arranges to provide all of the medical care you need that is covered under Medicare.* We also provide any other benefits agreed to under the contract with HCFA and with you.

Complaint, Ex. 6, Evidence of Coverage, at 6 (emphasis added).

Thus, unlike the situation contemplated in 29 C.F.R. § 1625.10(e), this is not an instance in which an employer provides some benefits to its Medicare-eligible employees while Medicare provides other benefits. In this case, Highmark has assumed the federal government's responsibility under Medicare and is consequently the only provider of health benefits to Plaintiffs. Highmark is required to provide Medicare-covered services to Plaintiffs pursuant to its contract with the HCFA, and for this reason SelectBlue necessarily varies from the other plans in certain respects. However, because the benefits are not provided by Medicare, we do not analyze the "Medicare-provided" and the "County-provided" benefits as distinct entities. Our inquiry with respect to the equal benefit prong is therefore whether the coverage provided to Plaintiffs under SecurityBlue is a "lesser benefit of any type" than the coverage provided to younger retirees under the traditional indemnity plan, SelectBlue, or both. For the reasons set forth below, we find that the benefits provided to Plaintiffs under SecurityBlue constitute a lesser benefit as compared to both the traditional indemnity plan and to SelectBlue. We discuss our findings with respect to each comparison in turn.

## A. Equal Benefit

### 1. SecurityBlue vs. Traditional Indemnity Plan

Plaintiffs focus on three specific differences between SecurityBlue and the traditional indemnity plan.[3] First, Plaintiffs contend that SecurityBlue constitutes a lesser benefit because, in order to maintain coverage under the plan, they must continue to pay their Medicare Part B insurance premiums, a cost of $43.80 per month at the time they filed their original brief, while younger retirees covered under the traditional indemnity plan were required to pay a significantly smaller premium of $12 per month. Plaintiffs' Brief in Support of Partial Summary Judgment Motion (hereinafter "Plaintiffs' Brief") [Doc. No. 17] at 21. Second, Plaintiffs argue that SecurityBlue constitutes a lesser benefit because it requires them to obtain services through PCPs and from health care providers within a specified geographic area and provider network, while retirees covered under the traditional indemnity plan were not so limited. Id. at 22. Finally, Plaintiffs contend that SecurityBlue constitutes a lesser benefit because it restricts prescription drug coverage to a "formulary" while the traditional indemnity plan did not. Id. at 23. The formulary is a list of drugs maintained by Highmark to which insureds are limited. If an insured wishes to obtain a drug that is not on the formulary, he or she must ask the physician to appeal to Highmark for an exception or pay the full price of the drug.

■ We turn to Plaintiffs' first argument that SecurityBlue is a lesser benefit than the traditional indemnity plan because the former requires Plaintiffs to continue paying their Medicare Part B premiums which, as of January 1, 2001, were $50 per month while the latter required enrollees to make a contribution of only $12 per month. A subset of 29 C.F.R. § 1625.10 addresses the permissible bounds of employee contributions to voluntary benefit plans in the context of the ADEA:

> As a condition of participation in a voluntary employee benefit plan. An older employee within the protected age group may be required as a condition of participation in a voluntary employee benefit plan to make a greater contribution than a younger employee only if the older employee is not thereby required to bear a greater proportion of the total premium cost (employer-paid and employee-paid) than the younger employee. Otherwise the requirement would discriminate against the older employee by making compensation in the form of an employer contribution available on less favorable terms than for the younger employee and denying that compensation altogether to an older employee unwilling or unable to meet the less favorable terms. Such discrimination is not authorized by section 4(f)(2) . . .

29 C.F.R. § 1625.10(d)(4)(ii). From the County's standpoint, Plaintiffs' SecurityBlue is the least expensive of the three plans it offers. Earlier in the litigation, the County's share of the total premium cost was $47 per month for each individual enrolled in SecurityBlue, although the amount has since increased.[4] Defendant's

---

**3.** The traditional indemnity plan was routinely provided to retirees under age 65 from February 1, 1998 to October 1, 1998. After this date, it was provided to retirees under age 65 who were not eligible for SelectBlue (because, e.g., they did not live in the SelectBlue service area). Thus, although we discuss the traditional indemnity plan in past tense terms, there are a small number of retirees still receiving coverage under the plan.

**4.** The amounts contributed by both the County and insureds under SecurityBlue and the traditional indemnity plan have changed since the inception of this litigation. At present, the County pays $108.85 per month for each individual insured under SecurityBlue who

Brief in Support of Cross–Motion for Summary Judgment (hereinafter "Defendant's Brief") at 7. The County's share of the total premium cost for each individual enrolled in the traditional indemnity plan was and continues to be higher than this amount. *Id.* Given this fact, it is apparent that Plaintiffs' Medicare Part B premiums represent a greater proportion of the total cost of SecurityBlue than the younger retirees' monthly $12 contribution toward the cost of the traditional indemnity plan. The County, however, contends that the Medicare Part B payments do not run afoul of the regulation because they are mandated by the Medicare program and are not assessed by the County. Specifically, the County states:

> Plaintiffs' complaint is not that the County is requiring them to pay a portion of the SecurityBlue premium, but rather that federal law mandates a deduction of $43.00 per month from their Social Security payments for their Medicare Part B coverage. The deduction for Medicare Part B has been in existence since long before the County started using SecurityBlue and generally applies to all Medicare-eligible retirees regardless of the identity of their former employer or the source of their medical coverage.

Supplemental Brief of the County of Erie Regarding "Equal Benefit" Safe Harbor of 29 U.S.C. § 623(f)(2)(B)(i) (hereinafter "Defendant's Supp. Brief") [Doc. No. 54] at 7.

In our view, the fact that the federal government assesses the Medicare Part B insurance premiums is irrelevant. As clar-ified at oral argument, although the federal government is the assessing entity, it ultimately pays at least a portion of the premiums to Highmark in exchange for Highmark's assumption of the responsibility it would otherwise have under the Medicare program. Pastore, Tr. of Proceedings at 26–27 (" . . . the federal government pays a specific dollar amount to Highmark for each insured under SecurityBlue because Medicare no longer has to assume responsibility for that person."). Attributing significance to the fact that the federal government is the assessing entity would, in this instance, exalt form over substance.

Moreover, we disagree with the County's assertion that federal law "mandates" that Medicare-eligible individuals pay Medicare Part B premiums. Part B coverage is an option available to Medicare-eligible individuals conditioned on payment of the Part B premiums. "Part B coverage is not freely or automatically available to all Medicare-eligible patients. To obtain this coverage, Medicare-eligible patients must first enroll in the Part B insurance program by paying insurance premiums . . ." *Pennsylvania Medical Society v. Snider*, 29 F.3d 886, 888 (3d Cir. 1994) (citing 42 U.S.C. §§ 1395o–1395s). The requirement of payment in this instance is mandated by Highmark's underwriting criteria for SecurityBlue. "As a SecurityBlue member, you must continue to pay your Medicare Part B Medical Insurance premium." Complaint, Ex. 6, Evidence of Coverage, p. 5.

---

resides in Region III (Crawford, Erie, and Mercer), $84.85 per month for each individual who resides in Region II (Bedford, Blair, and Somerset), and $74.00 per month for each individual who resides in Region I (all remaining counties). The County pays $224.38 per month for each individual insured under the traditional indemnity plan regardless of where the individual lives. As previously stated, Plaintiffs' Medicare Part B premiums are presently $50 per month. Younger retirees were required to contribute $12 per month toward the cost of their premiums at the inception of this litigation; the precise amount of their contribution as of this opinion is not clear.

In light of the above, we find that SecurityBlue's requirement that Plaintiffs continue paying their Medicare Part B premiums is tantamount to a requirement that Plaintiffs pay the premiums directly to Highmark. The practical effect of the requirement is that Plaintiffs are made to bear a greater proportion of the total cost of their health insurance premiums than younger retirees covered under the traditional indemnity plan. As stated previously, 29 C.F.R. § 1625.10(d)(4)(ii) expressly prohibits such a disproportionate contribution structure.

We now turn to Plaintiffs' second argument. As set forth above, Plaintiffs contend that SecurityBlue is a lesser benefit than the traditional indemnity plan because the former restricts insureds to a service provider network while the latter does not. To be clear, Plaintiffs do not contend that this restriction resulted in the receipt of inferior health care as compared to younger retirees covered under the traditional indemnity plan and there is no evidence on this record that Plaintiffs have received inferior care. *See* Pastore, Tr. of Proceedings at 31 (clarifying that Plaintiffs' position is not that the loss of choice resulted in inferior care). Rather, Plaintiffs assert that the more restricted choice is, in and of itself, a diminishment that renders SecurityBlue a lesser benefit than the traditional indemnity plan. *Id.* ("The harm is in the loss of choice itself."). In response, the County argues that Plaintiffs' focus is mistakenly on the process by which the benefits are delivered and that absent a substantive deficiency impacting on quality of care, the regulation is inapplicable.

■■■■ 29 C.F.R. § 1625.10 does not define the phrase "lesser benefit of any type." The parenthetical "including coverage for family and/or dependents," however, immediately follows the term. 29 C.F.R. § 1625.10(e). In our view, this parenthetical suggests that the regulation contemplates an objective interpretation. Coverage for family and/or dependents is, for instance, an objectively greater benefit than no coverage for such family members. The Plaintiffs' preference for a greater choice of service providers in this context, however, we find to be contrastingly subjective. As stated previously, the loss of choice under an HMO is accompanied by a greater level of coverage for those services rendered by providers in the network and authorized by the insured's PCP. Insureds under SecurityBlue pay no deductibles and generally very low co-payments for medical services. Insureds under the traditional indemnity plan, however, initially pay a deductible and thereafter pay a percentage of the cost of medical services. In other words, the greater choice under the traditional indemnity plan as compared to SecurityBlue does not come without a respective cost to the insured. We believe that the relative benefit of either plan is largely in the eye of the beholder. While Plaintiffs may prefer the traditional indemnity plan for its greater choice of service providers, other retirees are likely to prefer SecurityBlue for its low co-payments or other unique attributes such as coverage for eye examinations and dental visits. In light of the above, we find that absent the demonstration of some objective diminishment, *i.e.,* a lower quality of health care, Plaintiffs' preference for the traditional indemnity plan's mechanism of insuring medical services is a subjective preference outside the scope of the regulation.

Plaintiffs' third argument that SecurityBlue's prescription drug formulary renders the plan a lesser benefit than the traditional indemnity plan is similar to their second argument. The greater choice of prescription drugs under the traditional indemnity plan, like the greater choice of service providers, does not come without a respective cost to the insured.

While the traditional indemnity plan does not restrict insureds to a prescription drug formulary, it does require that they initially pay a deductible and thereafter pay a percentage of the cost of their prescription drugs. *See* Complaint, Ex. 4, Evidence of Coverage at 18–22. SecurityBlue, in contrast, restricts insureds to a formulary, but requires only a $10 co-payment per prescription up to a 34–day supply, and a $20 co-payment per prescription up to a 90–day supply. Complaint, Ex. 6, Evidence of Coverage, Prescription Drug Benefits at 1–3. We find that Plaintiffs' preference for the former mechanism is, again, a subjective preference that is outside the scope of 29 C.F.R. § 1625.10. Although Plaintiffs may prefer the traditional indemnity plan because it covers an unrestricted number of prescription drugs and places and annual cap on the amount of co-insurance an insured pays in a given year for both medical services and prescription drugs, other retirees are likely to prefer SecurityBlue's formulary/co-payment structure because it guarantees that no prescription will cost more than the established co-payment of $10 per prescription up to a 34–day supply and $20 per prescription up to a 90–day supply. The greater choice afforded by the traditional indemnity plan does not, in other words, objectively render the plan a greater benefit than SecurityBlue because the value of this aspect in this context is, in our view, subjective.

In sum, we find that Plaintiffs received a lesser benefit than the younger retirees during the period younger retirees were covered under the traditional indemnity plan, and therefore that the County is not entitled to the 29 U.S.C. § 623(f)(2)(B)(i) safe harbor under the equal benefit prong during this time, on the basis of the Medi-

care Part B payment requirement alone. 29 C.F.R. § 1625.10(d)(4)(ii) expressly prohibits employers from requiring older employees to contribute a greater proportion of their total premium costs to voluntary benefit plans than younger employees are required to contribute, and in our opinion, the Medicare Part B payments are such a required contribution.

2. SecurityBlue vs. SelectBlue

■ A SelectBlue document describes how the plan operates:

*Here's how SelectBlue works:*

*Like an HMO* ... when you have your care "coordinated" by your network Primary Care Physician (PCP), most eligible services, including preventive care, are covered in full with no deductibles and no claim forms to file.

*Like more traditional coverage* ... when you "self-refer" and choose to see any physician of your choice without your PCP's authorization, most eligible services are covered, but at a lower level of benefits.

*Id.* at 26 (quoting Deposition Ex. 15, App. 372). Plaintiffs' arguments that SecurityBlue is a lesser benefit than SelectBlue are similar to their arguments that SecurityBlue is a lesser benefit than the traditional indemnity plan.[5] First, Plaintiffs contend that SecurityBlue is a lesser benefit than SelectBlue because it requires them to continue paying their Medicare Part B premiums while SelectBlue does not require any contribution from covered retirees. Plaintiffs' Brief at 24. Second, Plaintiffs assert that SelectBlue is a greater benefit because it permits insureds to select either HMO coverage or traditional indemnity coverage for each health care incident, while SecurityBlue provides only HMO coverage. *Id.* at 25–26. Third,

**5.** SelectBlue was routinely provided to retirees under age 65 beginning October 1, 1998. Retirees who were ineligible for SelectBlue because they did not live in the SelectBlue service area continued to receive coverage under the traditional indemnity plan after this date.

Plaintiffs argue that SelectBlue, like the traditional indemnity plan, is a greater benefit than SecurityBlue because the former does not restrict insureds to a prescription drug formulary while the latter does. *Id.* at 28. We address each of these arguments in turn.

Plaintiffs' first argument is similar to that advanced with respect to the SecurityBlue/traditional indemnity plan comparison, namely that the discrepancy in cost to the insured renders SecurityBlue a lesser benefit than SelectBlue. The discrepancy in cost is even more substantial between SecurityBlue and SelectBlue than it was between SecurityBlue and the traditional indemnity plan. In this comparison, Plaintiffs are required to pay their Medicare Part B premiums (ranging from $43.80 at the inception of this litigation to $50 per month as of January 1, 2001) while younger retirees covered under SelectBlue are not required to contribute any portion of their premium costs. Requiring older employees to contribute a portion of voluntary benefit plan premiums while requiring no such contribution from younger employees is expressly prohibited by a subset of the regulation:

> *Non-contributory ("employer-pay-all") plans.* Where younger employees are not required to contribute *any* portion of the total premium cost, older employees may not be required to contribute any portion.

29 C.F.R. § 1625.10(d)(4)(ii)(B) (emphasis added). We conclude for the reasons previously stated in our discussion of the SecurityBlue/traditional indemnity plan comparison that the discrepancy in cost to the insured between SecurityBlue and SelectBlue renders the former a lesser benefit.

■ As previously discussed, we rejected Plaintiffs' argument that the diminishment in choice of service providers between SecurityBlue and the traditional indemnity plan rendered the former a lesser benefit than the latter because we found that Plaintiffs' preference for the greater choice was, in that context, subjective. In this comparison, however, the greater choice afforded by SelectBlue as compared to SecurityBlue is materially different; in this instance, younger retirees, for each health care incident, may select *either* HMO coverage *or* traditional indemnity coverage while Plaintiffs are entirely restricted to the HMO form. Similar to their earlier argument, Plaintiffs do not contend that this respective loss of choice has resulted in a lesser quality of health care as compared to younger retirees covered under SelectBlue and there is no evidence on this record that Plaintiffs have received inferior health care; rather, they argue that their inability to opt for either HMO or traditional indemnity coverage under SecurityBlue is itself a diminishment that renders the plan a lesser benefit. *See* Pastore, Tr. of Proceedings at 31.

We find that Plaintiffs' inability to select either form of coverage on an as-needed basis renders SecurityBlue a lesser benefit than SelectBlue. In our view, the flexibility afforded by SelectBlue's unique mechanism renders the plan objectively superior to Plaintiffs' SecurityBlue. In contrast to the greater choice of service providers afforded by the traditional indemnity plan as compared to SecurityBlue, the greater choice in this comparison is beneficial regardless of whether one's general preference is for HMO or traditional indemnity health insurance. The objective advantage of a dual program is that the insured's preference for either mechanism may consistently be accommodated. Because Plaintiffs are unable to similarly accommodate their preferences under SecurityBlue, we find that the plan is a lesser benefit under 29 C.F.R. § 1625.10.

Plaintiffs' final argument is that SecurityBlue is a lesser benefit than SelectBlue

because SelectBlue does not restrict insureds to a prescription drug formulary while SecurityBlue does. We agree. While we found that SecurityBlue's formulary did not render it a lesser benefit than the traditional indemnity plan, the instant comparison is also materially different. Under SelectBlue, insureds are not bound by a formulary and pay an established co-payment for each prescription regardless of what form of coverage they choose for their medical services. Complaint, Ex. 7, Evidence of Coverage at 14, 24. Further, the amount of the co-payment under SelectBlue is lower than it is under SecurityBlue ($2 or $3 per 34–day prescription versus $10 per 34–day prescription). *Id.* Thus, in this comparison, younger retirees covered under SelectBlue are not bound by a formulary *and,* in all instances, pay less for their prescription drugs than Plaintiffs. We conclude that the unrestricted choice of prescription drugs at a lower cost provided by SelectBlue is objectively a greater benefit than the restricted choice at a higher cost provided by SecurityBlue, and we therefore find that it is a lesser benefit under the regulation.

In sum, we find that SecurityBlue is a lesser benefit than SelectBlue for each of the three reasons asserted by Plaintiffs. The fact that Plaintiffs are required to pay their Medicare Part B premiums to maintain SecurityBlue coverage while younger retirees are not required to make any payments to maintain SelectBlue coverage is, in our view, a violation of the regulation's express directive that "[w]here younger retirees are not required to contribute any portion of the total premium cost, older employees may not be required to contribute any portion." 29 C.F.R. § 1625.10(d)(4)(ii)(B). Additionally, we find that the ability to alternate between forms of coverage and to obtain coverage for a greater number of prescription drugs at a lower cost under SelectBlue renders the plan a greater benefit than SecurityBlue. For each of these reasons, therefore, we find that the County is not entitled to the 29 U.S.C. § 623(f)(2)(B)(i) safe harbor under the equal benefit prong.

### B. Equal Cost

The Third Circuit directed that "[i]f the County cannot satisfy the "equal benefit" prong, the court should then turn to the "equal cost" inquiry ... [a]ccordingly, the district court should consider only those costs which the County itself incurs." *Erie County Retirees Ass'n v. Erie County,* 220 F.3d 193, 216 (3d Cir.2000). It is undisputed in this case that SecurityBlue is less expensive for the County than both the traditional indemnity plan and Select-Blue. Defendant's Brief at 7 ("Effective January 1, 1999, Highmark increased the monthly premium for SecurityBlue coverage from $0 to $47.00 for the same level of benefits coverage. Despite this significant increase in premiums, SecurityBlue remains the least expensive of the three plans utilized by the County."). At oral argument, the County conceded that it cannot meet the equal cost prong as it was defined by the Third Circuit in *Erie County Retirees.* Lanzillo, Tr. of Proceedings at 3. Thus, we find that the County is not entitled to the 29 U.S.C. § 623(f)(2)(B)(i) safe harbor under the equal cost prong of the equal benefit/equal cost rule.

### IV. Conclusion

For the foregoing reasons, we find that the County is not entitled to a safe harbor under 29 U.S.C. § 623(f)(2)(B)(i). We therefore grant Plaintiffs' Motion for Partial Summary Judgment with respect to their age discrimination claim under 29 U.S.C. § 623(a)(1), and deny Defendant's Cross–Motion for Partial Summary Judgment.