**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2055-16T1

RUTHERFORD PBA LOCAL 300,

    Plaintiff-Appellant,

v.

BOROUGH OF RUTHERFORD,

    Defendant-Respondent.

_____

Argued February 5, 2018 – Decided September 10, 2018

Before Judges Accurso and DeAlmeida.

On appeal from Superior Court of New Jersey, Chancery Division, General Equity Part, Bergen County, Docket No. C-000144-15.

Michael A. Bukosky argued the cause for appellant (Loccke, Correia & Bukosky, attorneys; Michael A. Bukosky, of counsel and on the brief; Corey M. Sargeant, on the brief).

Eric M. Bernstein & Associates, LLC, attorneys for respondent (Eric M. Bernstein, of counsel and on the brief; Stephanie M. Platt, on the brief).

PER CURIAM

Plaintiff Rutherford PBA Local 300 appeals from a December 9, 2016 judgment of the Chancery Division confirming an arbitration award under a collective negotiated agreement (CNA) with defendant Borough of Rutherford, and an August 29, 2016 Order from that court barring Local 300's claim that the arbitration award violates the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49.  We affirm.

I.

Local 300 is the exclusive collective bargaining representative for all full-time, law enforcement personnel employed by the Borough.  At the times relevant to this appeal, the parties were operating under a CNA that provided health insurance benefits to active employees and retirees.  The CNA provided in relevant part, as follows:

> Article XXXII
>
> (1)　The Borough shall provide and pay the full cost of the following medical coverages:  Blue Cross, Blue Shield, Rider J, Major Medical Insurance, and dental insurance for Employees and their families, of the same type as presently exists.
>
> . . . .
>
> (3)　The Borough shall provide a medical assistance program providing medical and dental coverages to all police retirees subject to the following guidelines:

. . . .

> (b)   Retiree Medical and dental coverage entitlement as is set forth in this article shall be provided by the Borough for the entire lifetime of the retiree and the entire lifetime of the employee's spouse. In the event that the retiree and the retiree's spouse become eligible for [M]edicare then the Borough shall be responsible for maintaining a wrap[-]around plan as a [M]edicare supplement so as to ensure the provision of the same level of medical and dental benefits to the retiree and spouse of the retiree. The level of medical and dental benefits shall be defined as that level of benefits provided to each retiree immediately before said retiree's separation from active police service with the Borough.

The Bergen Municipal Employee Benefits Fund, a joint insurance plan of which the Borough is a member, requires all Borough employees who are Medicare eligible to enroll in the full Medicare program to be eligible for retiree coverage. A wrap-around plan bridges the difference in benefits between Medicare and the employer's plan so that the total benefits provided by Medicare and the wrap-around plan to retirees equal the benefits provided by the employer's plan to active employees.

In March 2011, a retired Borough employee's wife became eligible for Medicare Part B. She enrolled in the program, and was provided a wrap-around plan at Borough expense. In early 2012, she received a statement from the federal government indicating that $1154 had been deducted from her Social

Security benefits for Medicare Part B premiums during 2011. Her spouse thereafter sent a letter to the Borough Administrator seeking reimbursement of the premiums, asserting that pursuant to the CNA, "[m]edical coverage is provided without cost to the retiree and spouse." The Borough declined the reimbursement request.

Local 300 filed a grievance on behalf of the retired employee. The grievance was denied and Local 300 invoked arbitration. On September 20, 2012, the Public Employment Relations Commission (PERC) referred the matter to an arbitrator for a hearing. The parties stipulated that the issue to be decided was "whether the Borough violated the parties' collective negotiated agreement . . . when it declined to reimburse a retiree for a Medicare Part B premium paid by his wife and, if so, what shall the remedy be."

Before the arbitrator, Local 300 argued that the provision in Article XXXII of the CNA defining retiree coverage "as is set forth in this article" must be read in pari materia with the earlier provision in the Article providing that the Borough "shall provide and pay the full cost of" specified types of medical coverage for active employees and their families. In addition, Local 300 argued that the provision of Article XXXII providing that the level of medical and dental benefits for the retiree or his or her spouse "shall be defined as that level of benefits provided to each retiree immediately before said retiree's separation

4

from active police service" obligates the Borough to pay the Medicare Part B premiums of retirees and their spouses, as the cost of coverage for medical insurance is a component of the level of benefits. According to Local 300, because the retiree who filed the grievance was not paying Medicare Part B premiums for his wife when he retired, it is the Borough's contractual obligation to pay those premiums after retirement.

Local 300 also argued that requiring retirees to pay Medicare Part B premiums while active officers pay no premiums for health insurance coverage would violate regulations promulgated under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623. See C.F.R. 1625.10(d)(4)(ii)(B) ("[W]here younger employees are not required to contribute any portion of the total premium cost, older employees may not be required to contribute any portion."); See Erie Cty. Retiree Ass'n v. Cty. of Erie, 140 F. Supp. 2d 466, 477 (W.D. Pa. 2001) ("The fact that Plaintiffs are required to pay their Medicare Part B premiums to maintain . . . coverage while younger retirees are not required to make any payments to maintain . . . coverage is . . . a violation of the regulation[.]"). Local 300 argued that the CNA should be construed to comport with the ADEA and its implementing regulations.

The Borough, on the other hand, argued that Article XXXII guarantees parity in only the "level of benefits" provided to active officers and retirees, not

in the cost of those benefits. According to the Borough, this interpretation of the CNA is evident in the provision of Article XXXII obligating the Borough to pay for a wrap-around plan to fill the gap between the benefits provided by Medicare Part B and the benefits provided to the retiree at the time of separation from active service. That provision does not require the Borough to pay the cost of Medicare Part B premiums. In addition, the Borough argued that the term "level of benefits," as used in the insurance industry, does not encompass the cost of benefits, further supporting its proposed interpretation of the CNA.

The Borough also argued that its position is consistent with the negotiation history of the CNA, and its implementation over many years. The Borough never budgeted for reimbursement of Medicare Part B premiums, and, prior to the present matter, which arose ten years after the relevant provisions became part of the CNA, was never presented with a request for reimbursement of Medicare Part B premiums. This is true despite the fact that four officers, including a member of the CNA negotiating team, who were eligible for Medicare Part B retired after the CNA was executed.

On March 19, 2013, the arbitrator issued a written opinion concluding that Local 300 did not establish by a preponderance of the evidence that the Borough breached the CNA when it declined to reimburse the retiree for his wife's Medicare Part B premiums. The arbitrator found that the provision of Article

6

XXXII obligating the Borough to pay the cost of benefits applies only to the insurance coverage of active employees and their families. He concluded that the provision addressing retirees required the Borough to provide a parity in benefits, not costs, between active employees and retirees, with an obligation on the Borough to bear the cost only of a wrap-around plan to bridge any gap in benefits.

In addition, the arbitrator was persuaded by the fact that Medicare Part B premiums were never discussed during the negotiations that resulted in the CNA, and that the Borough did not budget to pay those premiums. Finally, the arbitrator distinguished the holding in Erie. He found that in that case the Medicare-eligible employees were required to participate in a plan that had lesser benefits than those provided to younger retirees. He also noted that in Erie the employer's plan assumed the government's responsibilities under Medicare for the retirees. Thus, the retiree's Medicare Part B premiums were deemed to be tantamount to paying the premiums of the employer's plan, which resulted in a disproportionate contribution when compared to younger employees.

On June 6, 2013, the Borough filed a complaint in the Chancery Division seeking to confirm the arbitration award pursuant to N.J.S.A. 2A:24-7. On July 11, 2013, Local 300 filed a counterclaim seeking to vacate the arbitration award.

On March 24, 2014, the Chancery Division issued a comprehensive written opinion confirming the arbitrator's interpretation of the CNA. However, the court remanded the matter to the arbitrator to clarify his analysis of whether the CNA violates the ADEA because "older retirees will pay more to receive [the] same level of benefits than . . . younger retirees." See Tretina Printing, Inc. v. Fitzpatrick & Assocs., Inc., 135 N.J. 349, 353-64 (1994) (allowing remand to an arbitrator "for consideration or clarification" in limited circumstances).

In its submissions to the arbitrator on remand, Local 300 raised for the first time a claim that the CNA, as interpreted by the arbitrator, also violated the LAD by requiring older retirees to pay premiums for health insurance that younger retirees, who are not eligible for Medicare Part B because of their age, are not required to pay. On February 17, 2015, the arbitrator issued an amended decision. After an examination of the holding in Erie, the arbitrator noted that in 2007, the Equal Employment Opportunity Commission (EEOC), in response to the Erie decision, promulgated a regulation exempting from ADEA liability certain practices relating to the coordination of employer health care benefits with Medicare benefits available to retirees. The regulation provides that:

> Some employee benefit plans provide health benefits
> for retired participants that are altered, reduced or
> eliminated when the participant is eligible for Medicare

health benefits or for health benefits under a comparable State health benefit plan, whether or not the participant actually enrolls in the other benefit program. Pursuant to the authority contained in section 9 of the [ADEA], and in accordance with the procedures provided therein and in § 1625.30(b) of this part, it is hereby found necessary and proper in the public interest to exempt from all prohibitions of the [ADEA] such coordination of retiree health benefits with Medicare or a comparable State health benefit plan.

[29 C.F.R. § 1625.32(b).]

The Third Circuit rejected a challenge to the regulation, holding that "this narrow exemption from the ADEA is a reasonable, necessary and proper exercise of its . . . authority, as over time it will likely benefit all retirees." AARP v. EEOC, 489 F.3d 558, 565 (3d Cir. 2007). This is so because under the holding in Erie, employers had an incentive to reduce benefits for retirees not eligible for Medicare or to eliminate retiree benefits entirely.

Finding that the exemption created by the 2007 regulation applies to the CNA, the arbitrator concluded that the Borough's rejection of the reimbursement request did not violate the ADEA. The arbitrator did not mention Local 300's LAD claim, presumably because the claim was outside the scope of the Chancery Division's remand order.

On May 4, 2015, Local 300 filed a new complaint in the Chancery Division to vacate the arbitrator's amended award. The complaint was

9

accompanied by Local 300's motion to vacate the amended arbitration award. That motion included Local 300's LAD claims. Local 300 argued, in part, that although an EEOC regulation exempts the disparate treatment of retirees with respect to health care benefits from the strictures of the ADEA, no such exemption exists with respect to the LAD.

The Borough counterclaimed to confirm the amended arbitration award and subsequently moved to strike Local 300's LAD claim. The Borough argued that Local 300's LAD claim is barred as being beyond the scope of the dispute before the arbitrator, untimely, and precluded by the entire controversy doctrine. In addition, the Borough argued that the record before the arbitrator contains no evidence regarding an LAD claim because the parties and the arbitrator proceeded in the absence of any such claim by Local 300.

In response, Local 300 argued that the trial court should decide the LAD claim because the arbitrator's award is clearly contrary to the law and is not procedurally barred. Local 300 argued that the question of the Borough's compliance with the LAD is one of substantial public interest, which should be heard even though not raised in the arbitration. See Oliveri v. Y.M.F. Carpet, Inc. 186 N.J. 511 (2006).

On August 29, 2016, the trial court issued a comprehensive written opinion barring Local 300's LAD claim. The court concluded that had Local

10

300 "wished to make an LAD claim, such a claim should have been asserted at the outset of the original complaint, as the court finds that the cause of action was known, or should have been know, at that time." In addition, the trial court held that the LAD claim was outside the scope of its remand order, which was limited to whether the arbitrator's interpretation of the CNA violated the ADEA.

The trial court also held that the public interest did not warrant allowing the untimely LAD claim to proceed, as there had been no demonstration by Local 300 that a failure to address the LAD claim will have a strong negative impact beyond the interests of the parties. Finally, the trial court held that even if a substantial public interest was at stake, Local 300's LAD claim could not proceed, given the "complete absence of a record relating to an LAD claim."

On December 9, 2016, the trial court issued a written opinion confirming the arbitrator's amended award with respect to the ADEA claim.

This appeal followed.

## II.

Having reviewed the record in light of plaintiff's arguments and the law, we affirm substantially for the reasons expressed by Judge Menelaos W. Toskos in his thorough and well-reasoned written decisions confirming the arbitration award and amended arbitration award. We add only the following.

11

"Judicial review of an arbitration award is very limited." Bound Brook Bd. of Educ. v. Ciripompa, 228 N.J. 4, 11 (2017) (quoting Linden Bd. of Educ. v. Linden Educ. Ass'n ex rel. Mizichko, 202 N.J. 268, 276 (2010)). "[A]n arbitrator's award is not . . . set aside lightly." State v. Int'l Fed'n of Prof'l & Tech. Eng'rs, Local 195, 169 N.J. 505, 513 (2001). Pursuant to N.J.S.A. 2A:24-8, a court may vacate an arbitration award only on narrow grounds, including "[w]here the award was procured by corruption, fraud or undue means" or "[w]here the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made."

The review of an arbitration award resulting from a public-sector dispute is somewhat broader. Habick v. Liberty Mut. Fire Ins. Co., 320 N.J. Super. 244, 252 (App. Div. 1999). So long as an arbitrator's interpretation of a contract is "reasonably debatable" it will be upheld. Dep't of Law and Pub. Safety v. State Troopers Fraternal Ass'n, 91 N.J. 464, 469 (1982). A decision is "reasonably debatable" if it is "fairly arguable." Standard Oil Dev. Co. Emps. Union v. Esso Research & Eng'g Co., 38 N.J. Super. 106, 119 (App. Div. 1955). A court "may not substitute its own judgment for that of the arbitrator." N.J. Transit Bus Operations v. Amalgamated Transit Union, 187 N.J. 546, 554 (2006). This is

12

so "regardless of the court's view of the correctness of the arbitrator's interpretation." Ibid.

The record contains ample grounds supporting the arbitrator's interpretation of the CNA. No provision of the contract expressly provides that the Borough will bear the cost of Medicare Part B premiums for retirees. This contrasts with the express provisions of the CNA assigning to the Borough the responsibility for the cost of insurance for active employees, as well as for wrap-around plans to fill any gap in benefits for retirees enrolled in Medicare Part B. In addition, there is no support in the CNA for Local 300's position that a parity in benefits for retirees equates to a parity in costs. Moreover, after execution of the CNA, the Borough never budgeted for Medicare Part B reimbursements, and prior to the reimbursement request submitted by the grievant in this matter, no other retiree eligible for Medicare Part B sought a premium reimbursement from the Borough, even though the relevant provisions of the CNA had been in effect for ten years.

We also agree that the 2007 EEOC regulation insulates the Borough from a claim of discrimination under the ADEA and that Local 300 is barred from a similar claim of discrimination under the LAD. Local 300 did not raise the LAD in its initial submissions to the arbitrator. The Borough, therefore, did not have an opportunity to create a record defending its interpretation of the CNA under

the LAD.  Local 300's attempts to insert its LAD claim after the arbitrator issued his award, during the remand, and before the Chancery Division, were properly precluded.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2055-16T1