902 A.2d 209

NEW JERSEY TRANSIT BUS OPERATIONS, INC., PLAINTIFF-RESPONDENT, v. AMALGAMATED TRANSIT UNION, NEW JERSEY STATE COUNCIL, DEFENDANT-APPELLANT.

Argued May 2, 2006—Decided July 18, 2006.

*Raymond G. Heineman,* argued the cause for appellant (*Kroll Heineman Giblin,* attorneys).

*Angelo J. Genova,* argued the cause for respondent (*Genova, Burns & Vernoia,* attorneys; *Douglas E. Solomon,* on the brief).

PER CURIAM.

A deferential standard of review applies to an arbitrator's interpretation of a contract. So long as the arbitrator's interpretation of the contractual language is "reasonably debatable," a reviewing court is duty-bound to enforce it. *Kearny PBA Local # 21 v. Town of Kearny,* 81 *N.J.* 208, 221, 405 *A.*2d 393 (1979). The sole issue in this appeal is whether the Appellate Division adhered to that standard when it vacated two arbitration awards that favored Amalgamated Transit Union, New Jersey State Council (Union). We granted the Union's petition for certification from the unpublished per curiam decision of the panel. *N.J. Transit Bus Operations v. Amalgamated Transit Union, N.J. State Council,* 185 *N.J.* 596, 889 *A.*2d 444 (2005). For the reasons that follow, we reverse.

## I.

This matter commenced when plaintiff New Jersey Transit Bus Operations, Inc. (NJTBO) filed a complaint in the Chancery Division seeking to vacate two arbitration awards concerning payment to part-time bus operators. Pursuant to the terms of the collective bargaining agreement (CBA) between NJTBO and the Union, the parties had entered into binding arbitration to resolve two grievances. In the first, because part-time bus operators were required to show up for work five minutes before the start of each shift, the Union contended that NJTBO violated the CBA by

its failure to pay for those five minutes or for the operators' time spent returning their vehicles post-shift. The related grievance involved the Union's claim that the CBA was violated by NJTBO's failure to pay part-time operators for time spent filling out accident reports.

Two Sections of the CBA were implicated in the grievances. Section 16(P) addressed the treatment of part-time operators and provided in relevant part:

(a) Notwithstanding any other provision of the collective bargaining agreement, the Company may employ part-time operators. The use of such part-time operators is subject to the restrictions and limitations imposed by this section. Part-time operators will only receive pay and benefits specifically provided for in this section.

\* \* \* \*

(h) Part-time operators shall receive the same hourly rate as full-time operators....

Section 7 also addressed the activities at issue in the grievances. Section 7(B), entitled "Time for Reporting and Turning–In," provided:

All operators will be expected to report five (5) minutes before pull-out time of each assignment and shall be paid for such time with a minimum of ten (10) minutes per day.

Operators shall also be paid ten (10) minutes turn-in time for each day on which they perform platform work. However, operators on exact fare lines who are not required to turn-in to a receiver will not be paid turn-in time.

It is understood that turn-in time will continue to be paid to any operator on any line who is required to turn-in to the receiver.

Section 7(D), entitled "Accident Report Time," stated:

Operators shall be allowed twenty (20) minutes for making out each accident or witness report. All statements to Claim Department investigators shall be paid actual time with a minimum of fifteen (15) minutes and a maximum of sixty (60) minutes.

After conducting separate hearings on each grievance, the arbitrator held in favor of the Union in both cases based on the language of the CBA, the parties' conduct, and relevant labor laws. With respect to pre-shift "reporting time" and post-shift "turn-in time," the arbitrator interpreted Section 7(B) as evidencing an intention by the contracting parties that its "work" provi-

sions would be applied to "all operators," without differentiating between full or part-time bus operators. Indeed, the parties had implemented the reporting-time work requirement without differentiating between the two groups. The question was whether that time was includable when computing the hours worked by part-time operators.

The arbitrator's decision explained that

[a] careful review of Section 16(P) did not reveal to this Arbitrator that the Part-time operators would be paid for actual driving time only nor does it list in the restriction and limitations that the parties agreed to not paying the part-time operators reporting and turn-in time. In fact, paragraph (a) ... states that they will receive pay and benefits specifically provided in the section. To that end, paragraph (h) clearly indicates that the part-time operators shall receive the same hourly rate as full-time operators. Having said that, a variety of broadly defined contractual terms and conditions apply to part-time operators even though they are not explicitly provided for in Section 16(P) and of which some are benefits.

The arbitrator's decision then went on to list those other provisions outside of Section 16(P) that pertained to part-time operators. Thus, having determined that he had to consider both Section 16(P)(h) and Section 7(B) in order to discern the intention of the parties, he turned to Section 7(B). As noted, he found that the provision "clearly provide[d]" that "*[a]ll operators* will be expected to report five (5) minutes before pull-out time of each assignment and shall be paid for such time with a minimum of ten (10) minutes per day." (emphasis added). He found similarly expansive language in the provision addressing turn-in time: "[o]perators shall also be paid ten (10) minutes turn-in time for each day on which they perform platform work." He concluded that "there is no contract language which limits or restricts Section 7(B) from being applied to part-time operators" and observed that there were "no exceptions or limitations [in 7(B)] as [he] found in [other Sections of the contract] where it clearly indicates 'For regular operators,'" or similarly limiting language that precluded application to part-time operators. Moreover, he noted that

[t]he record indicates that the purpose of the operators' being expected to report five minutes before pull-out time is to conduct a pre-trip inspection which is

required by law. Both [parties' witnesses] ... established that these duties are performed in the interest of the Company.

He, therefore, determined that the language of Section 7(B) supported the Union's contention that the intent of the parties was to pay part-time operators for their reporting and turn-in time. In respect of the NJTBO's argument that focused on Section 16(P), the arbitrator found it significant that that Section contained no express requirement that part-time operators be paid only for actual driving time and failed to contain any restriction or limitation that prevented part-time operators from being compensated for "reporting time" or "turn-in time." Accordingly, he concluded that Section 16(P)(h) required NJTBO to pay part-time operators the same hourly rate as full-time operators and held that NJTBO was required to include the time intervals in issue when computing the hours worked by the part-time operators. He added that his interpretation of the CBA was consistent with "external law," including the Fair Labor Standards Act, 29 U.S.C.A. §§ 201–219, and Portal-to-Portal Act, 29 U.S.C.A. §§ 251–262. NJTBO was ordered to pay the affected part-time operators the amounts owed them under the CBA retroactive to July 1, 1999, the date of commencement of the CBA in force when the grievance was filed.

In a separate opinion, the arbitrator addressed the issue of compensation for time spent completing accident reports. Applying similar reasoning, he stated that Section 7(D) of the CBA "broadly requires twenty minutes for completing accident and witness reports as well as pay[ment] for the actual time spent providing statements to the Claim Department investigators." He added that

[a] careful review of Section 16(P) did not reveal ... that the part-time operators would be paid actual driving time only ... nor does it list in the restrictions and limitations that the parties agreed to not paying the part-time operators accident report time.

In sum, the arbitrator concluded that

[t]he Collective Bargaining Agreement in Section (P)(h), required the Company to pay part-time operators the same hourly rate as full-time operators regardless of whether those hours are worked driving, traveling, reporting, turning-in or com-

pleting an accident report or providing statements to the Claim Department investigators.

Accordingly, he ordered prospective relief in favor of the Union. From the date of the arbitration decision, NJTBO would be required to pay part-time operators for their time spent in completing accident reports.

Pursuant to *N.J.S.A.* 2A:24–7, NJTBO moved to vacate the awards, arguing that both should be overturned because they were premised on a mistake of law, because the arbitrator improperly applied the Fair Labor Standards Act, and because the arbitrator ignored "clear and unambiguous language" in the CBA that set forth the treatment of part-time employees. Each argument was rejected in a consolidated opinion of the court that affirmed both arbitration awards. Emphasizing the limited scope of judicial review of an arbitration award, the court noted that it must determine only whether the arbitrator's interpretation "was a reasonably debatable interpretation of the language of the agreement." In that assessment, the court "must determine only if the arbitrator followed the inherent guidelines of public sector arbitration and not whether it agrees this was a good or right decision." Applying those principles, the trial court agreed with the arbitrator's finding that there was ambiguity in the relevant terms of the CBA that was "subject to reasonable debate."

The court rejected NJTBO's argument that the arbitrator made a mistake of law justifying vacating the arbitration award. The court explained that it was not authorized to overturn an award based on mistake of law unless the mistake was so egregious and fatal that it voided the entire process, or was so gross as to implicate fraud or misconduct. The court found that no such error had occurred.

NJTBO appealed and the Appellate Division reversed and vacated the arbitrator's awards. The panel found that

the arbitrator [had] concluded that, when read as a whole, the agreement required part-time operators to be paid for the five minute report-in time prior to pull-out and for time to fill out accident reports, pointing to § 7(B) and (D) which so provide.

But these provisions apply to full-time operators only. As to part-time operators, the agreement is rather clear. It states:

Notwithstanding any other provision of the collective bargaining agreement, the Company may employ part-time operators. *The use of such part-time operators is subject to the restrictions and limitations imposed by this section. Part-time operators will only receive pay and benefits specifically provided for in this section.*

[§ 16(P)(a) (emphasis added).]

Pay for the five minute report-in time prior to pull-out and for the time to fill out accident reports is not within the "pay and benefits specifically provided for" in § 16(P). Thus, under the plain terms of this provision, part-time operators are not entitled to extra pay therefor.

Clearly " 'where an arbitration award does not draw its essence from the bargaining agreement, it will not be enforced by the courts.' " *County Coll. of Morris Staff Ass'n v. County Coll. of Morris,* 100 *N.J.* 383, 392, 495 *A.*2d 865 (1985) (quoting *Belardinelli v. Werner Cont'l Inc.,* 128 *N.J.Super.* 1, 7, 318 *A.*2d 777 (App.Div.1974)). If an arbitrator exceeds the scope of that authority, then his or her decision may be vacated on statutory grounds pursuant to *N.J.S.A.* 2A:24–8(d), which permits such vacation where "arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made." *See City Ass'n of Sup'rs & Adm'rs v. State Operated Sch. Dist. of City of Newark, supra,* 311 *N.J.Super.* at 311–12, 709 *A.*2d 1328 (finding that the arbitration panel, which had "no power to add to, delete from, or modify" the parties' agreement's provisions, exceeded its authority by adding to the agreement the concept of past practices, thereby ignoring the clear and unambiguous language of the agreement concerning the manner in which vacation days were earned and reaching a different result than that bargained for). Indeed, the agreement between the parties here expressly provides in § 1(A) that an arbitrator "shall not have any authority whatsoever to alter, amend, or modify any of the provisions of this agreement."

That is what occurred here. Section 16(P)(a) states that "[p]art time operators will only receive pay and benefits specifically provided for in this section." That cannot be any clearer or plainer. The arbitration awards here give the part-time operators pay that is not provided for in § 16(P).

In sum, the Appellate Division concluded that by not following the "clear" language of Section 16(P)(a) and limiting the part time operators to pay and benefits expressly enumerated in Section 16, the arbitrator exceeded his contractual authority and, in essence altered, amended, or modified the CBA. We now reverse.

## II.

An appellate court's review of an arbitrator's interpretation is confined to determining whether the interpretation of the

contractual language is "reasonably debatable." *State v. Int'l Fed'n of Prof'l & Technical Eng'rs, Local 195*, 169 *N.J.* 505, 513, 780 *A.*2d 525 (2001); *County College of Morris Staff Ass'n v. County College of Morris*, 100 *N.J.* 383, 391, 495 *A.*2d 865 (1985); *Old Bridge Bd. of Educ. v. Old Bridge Educ. Ass'n*, 98 *N.J.* 523, 527, 489 *A.*2d 159 (1985); *State v. State Troopers Fraternal Ass'n*, 91 *N.J.* 464, 469, 453 *A.*2d 176 (1982). Under that standard, a reviewing court may not substitute its own judgment for that of the arbitrator, regardless of the court's view of the correctness of the arbitrator's interpretation. *Int'l Fed'n of Prof'l & Technical Eng'rs, supra*, 169 *N.J.* at 514, 780 *A.*2d 525. The policy of strictly limiting judicial interference with arbitration is intended to promote arbitration as an end to litigation. *See County College of Morris, supra*, 100 *N.J.* at 390, 495 *A.*2d 865 ("[T]o the extent possible, arbitration should spell the conclusion to litigation rather than the beginning of it.").

That said, courts may vacate an arbitration award when "the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made." *N.J.S.A.* 2A:24–8d. That legislatively granted authority to vacate awards serves as a check on whether the arbitration award "draw[s] its essence from the bargaining agreement." *County College of Morris, supra*, 100 *N.J.* at 392, 495 *A.*2d 865. *See also Commc'ns Workers v. Monmouth County Bd. of Soc. Servs.*, 96 *N.J.* 442, 448, 476 *A.*2d 777 (1984) (noting that when contractual limits on arbitral authority are not heeded, arbitrator exceeds his powers). That check on arbitral authority, however, does not alter the traditional scope of review in matters of contract interpretation, which holds that the arbitrator's inter-pretation is to be affirmed if the contractual language is open to reasonable debate.

Applying that standard, it is clear that the Appellate Division substituted its judgment for that of the arbitrator when it declared that Section 16(P)(h) clearly answered the questions posed in these grievances. Although the panel believed that it

was preventing an amendment or modification of the contract, in essence its conclusion merely substituted one interpretation of the contract for another. The reasonably debatable standard requires, however, that the arbitrator's choice be examined to determine whether it was justifiable based on a reasonable interpretation of the contractual language. *See Kearny PBA Local # 21, supra,* 81 *N.J.* at 220–21, 405 *A.*2d 393. We find that the arbitrator gave the contract's various sections a reasonable interpretation and that in doing so he did not exceed the limits of his authority.

The arbitrator found Section 16(P)(h) to require NJTBO to pay part-time operators the same hourly rate for "work" as that paid to full-time operators. He further found Sections 7(B) and (D) to delineate "work" that the part-time operators are required to perform for the benefit of their employer. He concluded that NJTBO was required to pay part-time operators the same hourly rate for the work defined in Section 7(B) and (D) as was required for full-time operators. He also found that Section 16(P) did not restrict part-time operators from remuneration for such activities, nor did Section 7(B) or (D) contain any restriction against paying part-time operators for such work. And, although the arbitrator noted that Section 16(P)(a) states generally that pay and benefits are limited to that provided for in the Section, the arbitrator correctly noted that other Sections of the CBA provide benefits that applied to part-time operators. Ultimately, he relied on Section 16(P)(h)'s express authorization to pay part-time operators the "same hourly rate" for work performed as that paid to full-time operators. His opinion answered the question of what hours were to be included in the calculation of compensation based on that rate of pay. In our judgment, the arbitrator's weaving together of the numerous provisions that bore on the compensation issues before him was certainly reasonable. The only standard that the arbitrator's interpretative decisions were required to meet, in order to pass judicial scrutiny, was the "reasonably debatable" standard. That his decisions clearly did.

In sum, we hold that the Appellate Division substituted its judgment for that of the arbitrator when it reversed the two arbitration awards in issue. The arbitrator's interpretation of the contractual language satisfied the reasonably debatable standard and, therefore, the awards should have been affirmed on appeal.

## III.

For the reasons expressed herein, we reverse the judgment of the Appellate Division and remand for reinstatement of the arbitration awards.

*For reversal/remandment/reinstatement*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, WALLACE and RIVERA–SOTO—6.

Opposed—None.