**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4558-19

JERSEY CITY PUBLIC
EMPLOYEES, INC.,
LOCAL 245,

     Plaintiff-Appellant,

v.

CITY OF JERSEY CITY,

     Defendant-Respondent.

_____

Submitted March 17, 2021 – Decided May 27, 2021

Before Judges Alvarez and Geiger

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-1733-20.

Castronovo & McKinney, LLC, attorneys for appellant (Thomas A. McKinney and Julie S. Alarcón, of counsel and on the briefs).

Rainone Coughlin Minchello, LLC, attorneys for respondent (Louis N. Rainone and Charles R.G. Simmons, of counsel and on the brief; Ruben D. Perez, on the brief).

PER CURIAM

Plaintiff Jersey City Public Employees, Local 245, filed a grievance alleging defendant City of Jersey City violated the parties' Collective Negotiations Agreement (CNA) by failing to pay members double time for working through a weather-related state of emergency. The grievance was submitted for arbitration to the Public Employment Relations Commission (PERC). The parties disputed the meaning of Article 15(B)(11), which provides: "Employees who work during a State of Emergency covering the City of Jersey City, as declared by the Governor of New Jersey, will receive[] double time pay for all hours worked during the State of Emergency." We now reverse the Law Division's confirmation of the arbitrator's award, finding his interpretation of the language was not reasonably debatable.

On March 6, 2018, the Governor issued a state-wide weather-related executive order declaring a state of emergency, which was not rescinded until March 13 at 10:00 a.m. City workers were notified on March 7 that municipal offices would close at 1:00 p.m., and only essential employees would remain. Normal operations resumed on March 8. Only essential workers received double pay for the balance of the day when normal operations ceased.

A-4558-19

The arbitrator found the language of Article 15(B)(11) "ambiguous" and therefore heard extensive extrinsic evidence regarding the parties' intended meaning. The City's witnesses testified that the parties meant to provide a premium rate of pay for essential service employees who were required to work outside of normal operations, not to provide double time pay for non-essential employees performing regular duties after the City returned to ordinary business operations even if the state of emergency was still in effect. The arbitrator deemed the reference to a "[s]tate of [e]mergency covering the City of Jersey City," also found in Article 15(B)(11), to be ambiguous. He construed it to require double time pay only when a declaration of a state of emergency actually alters City operations and only to essential workers.

On February 12, 2020, in reliance on that testimony, the arbitrator issued an order and award denying plaintiffs' grievance. On May 6, the union filed a verified complaint and order to show cause seeking to vacate the award, while the City cross-moved to confirm it. In a July 10, 2020 written decision denying the union's application to vacate the award, the Law Division judge concluded he could not overturn the arbitrator's decision, which was entitled to great deference. The court found the arbitrator's analysis to be reasonably debatable and confirmed it.

3

On appeal, the union contends the language is not reasonably debatable, and that the arbitrator's award must be vacated. The union also contends that the arbitrator's award failed to follow relevant precedent that requires ambiguous terms to be construed against the City—a rule of construction he did not employ.

"As the decision to vacate an arbitration award is a decision of law, this court reviews the denial of a motion to vacate an arbitration award de novo." Manger v. Manger, 417 N.J. Super. 370, 376 (App. Div. 2010). Additionally, "[w]hether a term is clear or ambiguous is . . . a question of law." Nester v. O'Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997) (alteration in original) (quoting Kaufman v. Provident Life and Cas. Ins. Co., 828 F.Supp. 275, 282 (D.N.J. 1992)).

However, the courts apply "an extremely deferential [standard of] review when a party to a collective bargaining agreement [seeks] to vacate an arbitrator's award." Policemen's Benevolent Ass'n v. City of Trenton, 205 N.J. 422, 428 (2011). "[A]n arbitrator's award will be confirmed 'so long as the award is reasonably debatable.'" Id. at 429 (quoting Linden Bd. of Educ. v. Linden Educ. Ass'n ex rel. Mizichko, 202 N.J. 268, 276 (2010)). "It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business

overruling him because their interpretation of the contract is different from his." Borough of E. Rutherford v. E. Rutherford PBA Local 275, 213 N.J. 190, 202 (2013) (quoting Weiss v. Carpenter, Bennett & Morrissey, 143 N.J. 420, 433 (1996)).

The City contends that rational minds can differ as to the meaning of the language in the CNA. The union, to the contrary, interprets Article 15(B)(11) to mean that all members who worked from the date the state of emergency was declared to the date it was cancelled are entitled to double time pay.

The reasonably debatable standard calls for the arbitrator's interpretation to be "based on a reasonable interpretation of the contractual language." N.J. Transit Bus Operations, Inc. v. Amalgamated Transit Union, 187 N.J. 546, 555 (2006). Where arbitration awards have added new terms or ignored the clear language of a provision, such awards have been vacated. Trenton, 205 N.J. at 429; see also City Ass'n of Sup'rs and Adm'rs v. State Operated School Dist. of City of Newark, 311 N.J. Super. 300, 312 (App. Div. 1998) ("The arbitration panel exceeded its authority by ignoring the clear and unambiguous language of the agreement concerning the manner in which vacation days were earned."); Cnty. Coll. of Morris Staff Ass'n v. Cnty. Coll. of Morris, 100 N.J. 383, 397

(1985) (overturning an arbitrator's decision adding a requirement not in the plain language of the agreement).

In this case, the arbitrator did not explain the reason he found the state-of-emergency language in the CNA to be ambiguous, requiring testimony outside the four corners of the contract. The trial court did not offer an explanation either.

We do not see an ambiguity in the language, and consider the meaning to be self-evident and straightforward. In those cases, arbitration decisions may be reversed. See City of Newark, 311 N.J. Super. at 313.

The phrase regarding an emergency declaration "covering the City of Jersey City" is modified by the language which follows: "as declared by the Governor of New Jersey . . . ." The language could have said, but did not, "covering the City of Jersey City as established by a closure of City Hall," or "covering the City of Jersey City as determined by interference with normal City operations." The negotiated language was precise. It simply stated if the Governor issued a declaration of a state of emergency, then City employees were entitled to double time pay.

The City's position that the language should be interpreted to be a reference to normal operations is understandable. However, that reading of the

6

agreement has no support in the wording of the plain language of the section. Nor does the language distinguish between essential and non-essential workers, in addition to not requiring City operations be disrupted.

In fact, in other places in the CNA, the City did make reference to "normal operations of the City." This is the case in Article 4, and in Article 21, forbidding unions from interfering with the normal operations of business. The City could have made reference to disruption of City functions attributable to a weather-related Governor's executive order, but simply failed to do so.

The City argues that public policy militates in favor of affirming the arbitrator's award—but that argument falls outside the scope of the standard rules of interpretation applicable to employment contracts, even where a governmental entity is involved. City Hall resumed normal operations on March 8. But the result to which the City objects does not justify applying a different, tailor-made set of rules, in the interest of expediency, to Article 15(B)(11). Thus, the arbitrator's decision was not reasonably debatable and must be vacated.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4558-19