**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2129-22

POLICEMEN'S BENEVOLENT
ASSOCIATION LOCAL
NUMBER 258,

     Plaintiff-Respondent,

v.

COUNTY OF OCEAN,

     Defendant-Appellant.

_____

Submitted March 5, 2024 – Decided April 30, 2024

Before Judges Enright and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-2701-22.

Berry, Sahradnik, Kotzas & Benson, attorneys for appellant (Robert D. Budesa, on the briefs).

Crivelli, Barbati, & DeRose, LLC, attorneys for respondent (Michael Patrick DeRose, on the brief).

PER CURIAM

     In this arbitration case, defendant County of Ocean (County) appeals from

the February 17, 2023 order vacating and reversing an arbitration award entered in favor of the County and against plaintiff Policemen's Benevolent Association Local 258 (PBA).  We affirm.

I.

The facts giving rise to this appeal are undisputed.  The County and PBA were parties to a collective negotiations agreement (CNA) in effect from July 1, 2019 to June 30, 2022.  Article 26 of the parties' CNA was entitled "Bereavement Leave," and provided, in part:

> All employees shall receive up to three . . . days in the event of the death of a spouse, child, son-in-law, daughter-in-law, parent, father-in-law, mother-in-law, brother, brother-in-law, sister, sister-in-law, grandparent, grandchild, aunt, uncle, common law spouse[,] and any other member of the immediate household.  All employees shall be entitled to a leave of one . . . day to attend the funeral of a spouse's aunt, uncle[,] or grandparent.  Such leave is separate and distinct from any other leave time.  All such leave will not be taken until the immediate supervisor is notified of the instance of bereavement.  Verification may be requested by the Warden.
>
> [(Emphasis added).]

On September 12, 2021, County Correctional Police Corporal Frederick Piontek, Jr. filed a bereavement leave request based on his stepfather's death, asking for three leave days from September 17 to September 19, 2021 to attend

the decedent's memorial service. Piontek's shift commander initially approved the leave request, but his administrative captain later denied it. Accordingly, Piontek used three days from his accrued leave time to attend the memorial service.

Pursuant to Article 21 of the CNA, the PBA filed a grievance with the County, seeking to overturn the denial of Piontek's bereavement leave request. The County denied the grievance, reasoning that under Article 26 of the CNA, Piontek was entitled to bereavement leave for a parent's death, but not a stepparent's death. The PBA then sought to arbitrate the parties' dispute by filing a Request for Submission of a Panel of Arbitrators with the New Jersey Public Employment Relations Commission (PERC).

In April 2022, PERC assigned the case to Arbitrator Ira Cure. Cure conducted the arbitration hearing on August 25, 2022. During the hearing, the PBA argued Article 26 of the CNA did not limit the definition of a parent to a biological parent. Further, the PBA contended that Title 4A of the New Jersey Administrative Code, which governs civil service matters, supported the PBA's position because it included the term "stepparent" under the definition of a "parent."

A-2129-22

Piontek testified during the hearing. He stated his biological father and mother separated when he was a teenager, and his mother married his stepfather when Piontek was seventeen. Piontek also testified his "stepfather identified [him] as his own son[,] and [Piontek] identified [his stepfather] as [his] father." Further, Piontek stated he held his stepfather in higher regard than his biological father, and his children considered the decedent their grandfather.

The County's Employee Relations Director also testified at the hearing. He stated all of the County's CNAs contained bereavement clauses that were the same or similar to Article 26 in the parties' CNA, so the County had never paid bereavement leave based on a stepparent's death.

On September 13, 2021, Arbitrator Cure denied the PBA's grievance, finding the PBA failed to satisfy its burden in establishing the County violated the CNA by denying Piontek's bereavement leave request. After noting the threshold issue before him was "whether as a matter of contract construction, stepparents should be included in the definition of relatives whose death entitles a [PBA] member . . . to bereavement leave," Cure concluded stepparents were not included in the definition. He reasoned that Article 26 was "comprehensive," listing "eighteen categories of relatives and household

4

members whose death trigger[ed] bereavement leave," yet "[s]tepparents [we]re not . . . included in this provision."

Cure also rejected the PBA's contention "that there should be no distinction between biological parents, adoptive parents, and stepparents" when interpreting Article 26. Cure found "there [wa]s a distinction in the law," adding that under N.J.S.A. 2A:22-3, "governing [an] inheritance following an adoption[,] there [wa]s no distinction between adoptive and biological parents," but the statute did "not include or mention stepparents." He "conclude[d] that New Jersey law distinguishes between adoptive and stepparents" because "adoptive parents and children have a defined legal relationship," and thus, "there [wa]s a basis for distinguishing between biologic[al] and adoptive parents from stepparents for the purpose[] of bereavement leave." Accordingly, Cure found "the County was within its rights when it denied Corporal Piontek three days of bereavement leave for the death of his stepfather."

In December 2022, the PBA filed a complaint and order to show cause in Superior Court, seeking to vacate the arbitration award. After the trial court heard argument on February 17, 2023, it orally granted the PBA's application and vacated the arbitration award. The judge found that "the word[, 'parent,']" as set forth in Article 26 of the CNA, "include[d] a stepparent," adding, "I

5

find . . . you really have to do somersaults to . . . keep that type of reading out." Further, the judge explained, "if [the County] wanted to exclude [a stepparent], they could have made [Article 26] more specific." The judge also "f[ound] it . . . anomalous that [the CNA] would . . . allow someone to bereave a father-in-law but not [their] own mother's dead spouse." However, the judge concurred with Arbitrator Cure that the strength of the relationship between Piontek and his stepfather was not "material to [the] decision."

The judge entered a conforming order the same day, reversing and vacating the arbitrator's decision, sustaining the PBA's grievance, and designating Piontek's leave dates from September 17 to September 19, 2021 "as [b]ereavement [d]ays under Article 26 of the [CNA]." Further, the judge ordered the County to "replenish . . . . Piontek['s] . . . leave bank with the [p]ersonal, [v]acation[,] and/or [s]ick days that [Piontek] was forced to use by virtue of the County['s] . . . denial of his [b]ereavement [l]eave request."

II.

On appeal, the County argues: (1) "Arbitrator Cure's decision was correct and based upon the plain meaning of the agreement existing between the parties"; and (2) "civil service definitions of the word 'parent' are not applicable to this controversy."

6                                                         A-2129-22

The standards that guide our review are well known. "Arbitration is a favored form of dispute resolution, whose usefulness for labor-management issues is well-recognized in this [S]tate." Borough of E. Rutherford v. E. Rutherford PBA Loc. 275, 213 N.J. 190, 201 (2013) (citing Middletown Twp. PBA Loc. 124 v. Twp. of Middletown, 193 N.J. 1, 10 (2007)). Arbitration of public sector labor disputes, in particular, is meant to "be a fast and inexpensive way to achieve final resolution of such disputes and not merely 'a way-station on route to the courthouse.'" PBA, Loc. No. 11 v. City of Trenton, 205 N.J. 422, 429 (2011) (quoting Linden Bd. of Educ. v. Linden Educ. Ass'n, 202 N.J. 268, 276 (2010)).

"Consistent with the salutary purposes that arbitration as a dispute-resolution mechanism promotes, courts grant arbitration awards considerable deference." E. Rutherford PBA, 213 N.J. at 201. Therefore, "an arbitrator's award resolving a public sector dispute will be accepted so long as the award is 'reasonably debatable.'" Borough of Carteret v. Firefighters Mut. Benevolent Ass'n, Loc. 67, 247 N.J. 202, 211 (2021) (quoting E. Rutherford PBA, 213 N.J. at 201-02). An award is "reasonably debatable" if it is "justifiable" or "fully supportable in the record." City of Trenton, 205 N.J. at 431 (quoting Kearny PBA Loc. No. 21 v. Town of Kearny, 81 N.J. 208, 223-24 (1979)). "Under the

'reasonably debatable' standard, a court reviewing an arbitration award 'may not substitute its own judgment for that of the arbitrator, regardless of the court's view of the correctness of the arbitrator's position.'" Middletown Twp. PBA, 193 N.J. at 11 (quoting N.J. Transit Bus Operations, Inc. v. Amalgamated Transit Union, 187 N.J. 546, 554 (2006)). "Put differently, if two or more interpretations of a labor agreement could be plausibly argued, the outcome is at least reasonably debatable." Firefighters Mut. Benevolent Ass'n, Loc. 67, 247 N.J. at 212.

Although a court's standard of review of an arbitration award is highly deferential, the New Jersey Arbitration Act, N.J.S.A. 2A:24-1 to -11, provides the following four statutory bases for vacating an arbitration award:

> a. Where the award was procured by corruption, fraud or undue means;
>
> b. Where there was either evident partiality or corruption in the arbitrators, or any thereof;
>
> c. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause being shown therefor, or in refusing to hear evidence, pertinent and material to the controversy, or of any other misbehaviors prejudicial to the rights of any party;
>
> d. Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final[,] and

definite award upon the subject matter submitted was not made.

[N.J.S.A. 2A:24-8.]

Accordingly, it is clear that our highly deferential standard of review is not meant

> to suggest that an arbitrator's award is impervious to attack. Indeed, it is axiomatic that an arbitrator's "award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award."
>
> Thus, our courts have vacated arbitrations awards as not reasonably debatable when arbitrators have . . . added new terms to an agreement or ignored its clear language.
>
> [City of Trenton, 205 N.J. at 429-430 (first quoting United Steelworkers v. Enter. Wheel & Car Corp., 363 U.S. 593, 597 (1960) and then citing Cnty. Coll. of Morris Staff Ass'n v. Cnty. Coll. of Morris, 100 N.J. 338, 397-98 (1985)).]

Thus, if an arbitrator exceeds their authority by adding a new term to the contract, the award may be vacated pursuant to N.J.S.A. 2A:24-8(d). See, e.g., Cnty. Coll. of Morris Staff Ass'n, 100 N.J. at 397-98 (1985) (declining to sustain arbitration award because arbitrator exceeded his authority by adding extra term to the negotiated agreement); see also City of Trenton, 205 N.J. at 429.

Guided by these principles, we are satisfied this is one of those rare instances where the arbitrator exceeded his authority. In fact, the arbitrator effectively added to the provisions of the CNA by "reading into" Article 26 the terms, "biological" and "adoptive," before the word, "parent," to exclude a stepparent from the definition of a "parent." Moreover, it appears he essentially modified Article 26 by heavily relying on the provisions of N.J.S.A. 2A:22-3, finding that under this inheritance statute, "there is no distinction between adoptive and biological parents," because "adoptive parents and children have a defined legal relationship." In doing so, Arbitrator Cure implicitly suggested stepparents who do not adopt their stepchildren have no legal relationship.[1]

However, in his analysis of Article 26, Cure failed to reconcile why a PBA member would not be entitled to a single day, let alone three days, of bereavement leave for the death of a stepparent, yet, under the plain terms of that Article, the member would be entitled to a full day of bereavement leave for the death of a spouse's aunt, uncle, or grandparent, i.e., persons with whom

---

[1] The arbitrator's narrow focus on this statute seemingly overlooks that our Supreme Court has recognized the relationship between a stepparent and child to sanction "the equitable imposition of a duty of child support upon a stepparent when the evidence assessed in accordance with principles of equity demand that result." M.H.B. v. H.T.B., 100 N.J. 567, 578 (1985); see also Miller v. Miller, 97 N.J. 154, 167-68 (1984).

10                                                                 A-2129-22

the member had no biological or adoptive ties, and with whom the member likely never lived.

In sum, because the arbitrator effectively added terms to Article 26 of the CNA to limit the definition of who qualifies as a "parent" under that Article, he exceeded his authority. Therefore, we cannot conclude the trial court erred in vacating and reversing the arbitration award.

To the extent we have not addressed the County's remaining arguments, we deem them to be without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11

A-2129-22