**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2974-23

OCEAN COUNTY, DEPARTMENT
OF CORRECTIONS,

    Plaintiff-Respondent,

v.

POLICEMEN'S BENEVOLENT
ASSOCIATION, LOCAL 258,

    Defendant-Appellant.

_____

        Argued September 11, 2025 – Decided October 16, 2025

        Before Judges Berdote Byrne and Jablonski.

        On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-0714-24.

        Michael P. DeRose argued the cause for appellant (Crivelli, Barbati & DeRose, LLC, attorneys; Michael P. DeRose, on the briefs).

        Robert D. Budesa argued the cause for respondent (Berry, Sahradnik, Kotzas & Benson, attorneys; Robert D. Budesa, on the brief).

PER CURIAM

Petitioner, Policemen's Benevolent Association Local 258 (the PBA), seeks reversal of the trial court's order vacating an arbitration award that granted a correctional police officer holiday pay consistent with a collective bargaining agreement, for the period of time the officer was on leave and receiving workers' compensation benefits pursuant to N.J.S.A. 34:15-12. We conclude the arbitrator's decision was, at minimum reasonably debatable, constraining us to vacate the trial court's order. Based on the language of the collective bargaining agreement, the holiday pay was a benefit the officer was entitled to receive pursuant to the collective bargaining agreement, was not compensation in lieu of wages, and therefore not preempted by the Worker's Compensation Act (Act) N.J.S.A. 34:15-1 to 34:15-146. Accordingly, we vacate the trial court's order and reinstate the arbitration award.

I.

The facts before us are undisputed. The PBA is the exclusive representative of all correctional police officers employed by respondent, Ocean County. The County and PBA are parties to collective negotiations agreements (Agreements), for relevant purposes effective from July 1, 2019, through June 30, 2022, and July 1, 2022, through June 30, 2025.[1]

---

[1] The language of Article 12, the article at issue, is identical in both agreements.

A-2974-23

Correctional police officer Maria Adamopoulos was on workers' compensation leave due to a work-related injury from approximately January of 2022 through January of 2023. Upon her return from injury leave in January of 2023, Adamopoulos had anticipated receiving holiday pay from the County for the thirteen holidays that fell within the time she was out on workers' compensation leave. During prior periods when Adamapolos had been out on leave (not for a work-related injury), she had received holiday pay. However, upon her return to work, she was denied full holiday pay by the County for those days denoted as holidays in the Agreement. The PBA filed a grievance seeking payment for those thirteen holidays that occurred while she was out on workers' compensation leave, pursuant to Article 12 of the Agreements. The County took the position Adamopoulos had received the correct amount of pay to which she was entitled, including payment of those thirteen holidays as part of the work week at the rate of 70%, because "employees on workers compensation receive 70% of their rate of pay for 40 hours per pay period." The PBA countered Adamopoulos was entitled to 100% of her pay for applicable holidays based on the express language of Article 12. The County posited "holidays are a part of the pay week, not an additional payment above the 40 hours for which a full-time employee is paid." They then asserted there is "nothing in Article 12 [of

3

the Agreement] requiring an officer to be paid at 100% of their pay while on workers compensation" and the provision says "pay" as opposed to "full pay" or "full rate." The County set forth a chart listing the holidays that occurred during Adamopoulos's workers compensation leave, asserting she was paid for each holiday directly by the County at the rate of 100% during her first sixty (60) days of workers' compensation leave, and then through her periodic workers' compensation payments, or temporary total disability payments, at a rate of 70%, for the remaining time she was out on injury leave.

The PBA explained it was not challenging the mathematical calculation of the temporary disability wages for the time in question because it was not seeking compensation for the officer's work-related injury, but rather it was seeking her receipt of holiday pay, a benefit unrelated to disability benefits.

The matter proceeded to a hearing before Arbitrator James M. Cooney, Esq. The arbitrator ruled the PBA had met its burden of proof and the County had violated Article 12 of the Agreement with respect to the officer's entitlement to holiday pay, ordering the County to promptly compensate Adamopoulos for all holidays that had occurred while she was on workers' compensation leave at 100% of her regular rate of pay.

The arbitrator specifically found Article 12 of the parties' Agreement was clear and unambiguous. He further ruled the Act and its exclusivity provision did not preempt the recovery sought by the PBA. The arbitrator noted the County had not cited any authority to demonstrate an employee surrenders contractual benefits not related to wage compensation for an injury covered by workers' compensation benefits while out of work on such leave. He accepted the PBA's position it was not seeking compensation for Adamopoulos as payment for her work-related injury, but instead as a contractual benefit available to all members covered by the Agreement. He therefore found the Act did not preempt the payment of holiday pay pursuant to the Agreement.

The County filed an order to show cause before the trial court seeking to vacate the arbitration award, arguing the relief afforded by the arbitrator was preempted by the exclusivity provisions of the Act. The trial court granted the County's order to show cause and vacated the arbitration award, finding it was procured by undue means pursuant to N.J.S.A. 2A:24-8 and it was against public policy because it conflicted with the Act and the Act's calculation of temporary benefits. It concluded "temporary disability benefits are paid in lieu of wages." This appeal ensued.

A-2974-23

## II.

The standards guiding our review are well known. "Arbitration is a favored form of dispute resolution, whose usefulness for labor-management issues is well-recognized in this [S]tate." Borough of E. Rutherford v. E. Rutherford PBA Loc. 275, 213 N.J. 190, 201 (2013) (citing Middletown Twp. PBA Loc. 124 v. Twp. of Middletown, 193 N.J. 1, 10 (2007)). Arbitration of public sector labor disputes, in particular, is meant to "be a fast and inexpensive way to achieve final resolution of such disputes and not merely 'a way-station on route to the courthouse.'" PBA, Loc. No. 11 v. City of Trenton, 205 N.J. 422, 429 (2011) (quoting Linden Bd. of Educ. v. Linden Educ. Ass'n, 202 N.J. 268, 276 (2010)).

"Consistent with the salutary purposes that arbitration as a dispute-resolution mechanism promotes, courts grant arbitration awards considerable deference." E. Rutherford PBA, 213 N.J. at 201. Therefore, "an arbitrator's award resolving a public sector dispute will be accepted so long as the award is 'reasonably debatable.'" Borough of Carteret v. Firefighters Mut. Benevolent Ass'n, Loc. 67, 247 N.J. 202, 211 (2021) (quoting E. Rutherford PBA, 213 N.J. at 201-02). An award is "reasonably debatable if it is 'justifiable' or 'fully supportable in the record.'" PBA, Loc. No. 11, 205 N.J. at 431 (quoting Kearny

A-2974-23

PBA Loc. No. 21 v. Town of Kearny, 81 N.J. 208, 223-24 (1979)). "Under the 'reasonably debatable' standard, a court reviewing an arbitration award 'may not substitute its own judgment for that of the arbitrator, regardless of the court's view of the correctness of the arbitrator's position.'" Middletown Twp. PBA Loc. 124, 193 N.J. at 11 (quoting N.J. Transit Bus Operations, Inc. v. Amalgamated Transit Union, 187 N.J. 546, 554 (2006)). "Put differently, if two or more interpretations of a labor agreement could be plausibly argued, the outcome is at least reasonably debatable." Firefighters Mut. Benevolent Ass'n, Loc. 67, 247 N.J. at 212.

Although a court's standard of review of a public arbitration award is highly deferential, the New Jersey Arbitration Act, N.J.S.A. 2A:24-1 to -11, provides four limited, statutory bases for vacating an arbitration award:

> a. Where the award was procured by corruption, fraud or undue means;
>
> b. Where there was either evident partiality or corruption in the arbitrators, or any thereof;
>
> c. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause being shown therefor, or in refusing to hear evidence, pertinent and material to the controversy, or of any other misbehaviors prejudicial to the rights of any party;

d. Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final[,] and definite award upon the subject matter submitted was not made.

[N.J.S.A. 2A:24-8.]

At issue is the language of Article 12 of the Agreement, which states:

## <u>ARTICLE 12</u>

### <u>HOLIDAYS</u>

Each full-time Officer covered by this Agreement shall enjoy the following holidays with pay, to be observed on the dates specified each January by the Board of Chosen Freeholders:

**<u>Group A</u>**
Christmas Day
New Year's Day
Thanksgiving Day
July 4th
Memorial Day
Labor Day

**<u>Group B</u>**
Columbus Day
Veteran's Day
General Election Day
Martin Luther King Day
Presidents' Day
Good Friday

Should the Board of Chosen Freeholders designate a different date for the County celebration of New Year's Day, July 4th and Christmas, said designation shall not apply to members of this Bargaining unit.

A-2974-23

Amongst each shift and regardless of unit assignment, requests for holiday time off for those holidays designated within "Group A" shall be awarded based upon Departmental Seniority by rotation. Requests for holiday time off for those holidays designated within "Group B" shall be awarded based upon Departmental Seniority by rotation within the Unit and within each shift requested. The holiday selection processes will be completed after the annual shift bidding process is completed but prior to the actual changing of shifts for the new year.

In the event any Officer covered by this Agreement is required by the Warden to perform duties on any of the holidays enumerated above or on Easter Sunday, whether scheduled or call-in situations, he/she shall be compensated as set forth below:

A. All work performed on a holiday shall be compensated at a rate equal to two and one-half times (2-1/2X) the rate of pay which would apply on a normal workday. The eight (8) hours regular day's pay shall always count toward the 2-1/2X rate of pay. Specific examples follows:

1. Employee scheduled to work eight (8) hours on a holiday who actually works the eight (8) hours.

8 hours (regular pay@ straight time) = 8 hours
8 hours @ 1-1/2X                     =12hours
              TOTAL PAY           20 hours

2. Employee scheduled to work eight (8) hours on a holiday who actually works the sixteen (16) hours:

8 hours @ straight time          =  8 hours
8 hours @ 1-1/2X                 = 12 hours
8 hours @ 2-2/2X                 = 20 hours

A-2974-23

TOTAL PAY        40 hours

3. Employee not scheduled because of a holiday who is called in to perform two (2) hours' work:

8 hours @ straight time                    = 8 hours
4hours (min. call back) @1-1/2X            = 6 hours
                        TOTAL PAY            14 hours

4. Employee not scheduled to work because of a holiday who is called in to perform ten (10) hours work:

8 hours @ straight time  hours             =8 hours
8 hours @ 1-1/2X                           = 12 hours
8 hours @ 2-2/2X                           = 5 hours
                        TOTAL PAY            25 hours

We conclude the arbitrator's award is reasonably debatable and the trial court erred in vacating the award. The language of Article 12 of the Agreement states all full-time employees subject to the Agreement shall receive holiday pay, regardless of whether they are actually working on that holiday or not. The issue of whether holiday pay represents a wage, which may be preempted by the Act, or a benefit, which is conferred to employees in addition to any wages, is reasonably debatable, particularly given the accompanying language in Article 12 granting additional wages to those employees who work on the holiday.

The arbitrator's decision, holding holiday pay is not compensation, which may be preempted by the Act, but rather a benefit that continues to accrue during any officer's period of disability leave, was not procured by undue means and is

10

not against public policy. Had the holiday pay been available only to those employees who actually worked on that date, the court's interpretation of holiday pay as compensation preempted by the workers' compensation act's "payment in lieu of wages" language would have been persuasive. However, the plain language of Article 12 demonstrates employees who work on those holidays are entitled to hourly wages, above the payment of the negotiated benefit. It is undisputed employees on workers' compensation leave continue to accrue any manner of benefits, including vacation time, sick time, deferred compensation, and payments of medical insurance benefits, during their periods of leave. At minimum, the arbitrator's decision was reasonably debatable.

We are also persuaded by Adamopolous's argument that the prior course of conduct between the County and the PBA made it incumbent upon the County to specifically exclude holiday pay for those employees partaking in workers' compensation leave if it sought to do so. The County does not deny it paid full holiday pay to employees who were on other forms of leave, including to Adamopoulos in the past. Had it wished to exclude holiday pay to those employees specifically on workers' compensation leave, it could have explicitly negotiated such a limitation in the Agreement. The mere existence of a statute or regulation related to a given term or condition of employment in a collective

11

bargaining agreement does not automatically preclude negotiations as to that term. See In re Local 195, IFPTE 88 N.J. 393 (1982). The lack of any qualifying or limiting language in Article 12 of the Agreement, coupled with language awarding additional hourly wages to those employees who work on the holidays, supports our conclusion the arbitrator's award was not procured by undue means or against public policy.

The trial court's order of April 26, 2024, is reversed. The arbitrator's award of December 24, 2023, is reinstated. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-2974-23